UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ X
                              :        19cv4171 (DLC)
NELSON RODRIGUEZ,             :
                              :
                 Petitioner, :       OPINION AND ORDER
          -v-                 :
                              :
MICHAEL CAPRA,               :
                 Respondent. :
                              :
------------------------------ X

APPEARANCES:

For the petitioner:
Center for Appellate Litigation
Alexandra Leigh Mitter
120 Wall Street
New York, NY 10005

For the respondent:
New York County District Attorney Office
Stephen Joseph Kress
One Hogan Place
New York, NY 10013

DENISE COTE, District Judge:

     Nelson Rodriguez filed this petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254 on May 8, 2019.  Rodriguez

is serving a twenty-three year term of imprisonment following

his conviction by a jury in New York state court for sexual

conduct against his daughter.  In his petition, Rodriguez

asserts principally that his attorney failed to provide him with

effective assistance of counsel at the trial.  For the following

reasons, Rodriguez's petition is denied.

## Background

At trial, which was held in 2009, the prosecution established that Rodriguez had sexually abused his daughter, JR. Rodriguez began to touch JR inappropriately when she was eight years old.  Over the next four or so years, Rodriguez continually engaged in sexual conduct with JR, including kissing, touching, oral sex, and vaginal and anal sex.  The sexual contact ended around 2006, when JR was around twelve years old.  JR disclosed the sexual abuse for the first time to her aunt in December 2008, when she was fourteen years old.  The next month, in January 2009, she told her mother, Angela Rodriguez ("Angela"), who was divorced from JR's father and who immediately reported the abuse.  JR had recently left her father's home, following an argument with him, and was living with her mother.  When JR testified at trial, she was fifteen years old.

The pediatric nurse practitioner (the "Nurse") who conducted the physical examination of JR a few days after JR reported the abuse to Angela testified that she found no physical evidence of the abuse, but that the passage of time could account for the absence of such evidence.  Dr. Donald J. Lewittes, who testified as an expert in clinical and forensic psychology, described a phenomenon called the intrafamilial child sexual abuse syndrome or CSAAS.  He opined that it is

2

common for children to delay disclosure of sexual abuse until they are no longer in the home where the abuse occurred.

Rodriguez's step-daughter Carolina Alcantara ("Alcantara") testified that Rodriguez had abused her for about three years. The abuse began when Alcantara eleven years old; Rodrigeuz threatened her with a knife when she resisted.[1]  This abuse occurred nearly a decade before Rodriguez began to abuse JR. Alcantara explained that hearing in 2009 of JR's experience, Alcantara disclosed her own experience of abuse.  Alcantara was twenty-seven years old when she testified at trial.

At trial, defense counsel emphasized that the Nurse saw no physical evidence of the abuse at the time she examined JR despite JR's testimony that she had been abused for years with sexual acts including penetration, JR's delay in reporting the abuse, and JR's motive to take revenge on her father following their argument.  Specifically, on cross examination, defense counsel questioned JR about an argument she had with her father and her brother about her father buying her brother a new computer.  Defense also called a neighbor to testify regarding

---

[1] Prior to the trial, the prosecution moved to admit evidence that Rodriguez sexually abused nine other family members.  The trial court excluded all the evidence except for the testimony of Alcantara.  Alcantara was Angela's daughter from another marriage and JR's half-sister.  The trial judge found that Alcantara's testimony was relevant for background and was interconnected with JR's testimony; Rodriguez had discussed his abuse of Alcantara with JR.

this fight and three character witnesses to testify to
Rodriguez's reputation for peacefulness.

Rodriguez was convicted on November 30, 2009, of one count
of a course of sexual misconduct against a child in the first
degree.  On December 17, 2009, the court sentenced Rodriguez
principally to twenty-seven years' imprisonment.

On June 10, 2013, represented by new counsel, Rodriguez
moved to vacate his conviction pursuant to C.P.L. § 440.10 ("§
440").  Over five days in October 2014 and August 2015, the
judge who had presided over the trial held a § 440 hearing to
address Rodriguez's ineffective assistance of counsel claims.
Rodriguez called three witnesses:  his trial attorney, expert
Dr. Raymond Paynter, and Rodriguez's son Nelson Rodriguez, Jr.,
who had lived with JR and Rodriguez during the period of abuse.
The State called one witness, expert Dr. Jocelyn Brown.

On December 1, 2016, in a 39-page opinion, the court denied
the § 440 motion.  The court concluded both that defense counsel
had provided Rodriguez with effective assistance of counsel and
that the representation was, on the whole, professional and
effective.  The opinion summarized the § 440 testimony in
considerable detail and explained the reasons for rejecting the
motion.

Rodriguez appealed, and on March 29, 2018, the Appellate
Division unanimously affirmed the conviction and the denial of

4

the § 440 motion.  People v. Rodriguez, 73 N.Y.S.3d 555 (1st
Dep't 2018).  In a brief decision, the court upheld the trial
court's admission of Alcantara's testimony.  Id. at 556.  As to
the ineffective assistance claims, the Appellate Division
concluded that defense counsel "reasonably chose" not to cross
examine JR "too aggressively" given the "risks of making a
negative impression on the jury."  Id. at 557.  It also
concluded that, due to the lack of physical evidence of abuse,
"counsel's decision not to call a medical expert did not
constitute ineffective assistance of counsel."  Id.  The
Appellate Division rejected Rodriguez's remaining arguments in
support of the ineffectiveness claims.  Id.  The New York Court
of Appeals denied Rodriguez leave to appeal on June 12, 2018.
People v. Rodriguez, 31 N.Y.3d 1121 (2018).

    On May 8, 2019, Rodriguez filed the instant habeas
petition.  The judge to whom this case was then assigned
referred the petition to Magistrate Judge Sarah Netburn for a
report and recommendation.  On May 23, 2022, Judge Netburn
recommended denying the petition ("Report").  As described
below, she also recommended certifying an issue for review by
the Court of Appeals.

    On June 13, Rodriguez and the State filed their objections
to the Report.  They have each responded to the other's
objections.  The case was reassigned to this Court on August 17.

5

## Discussion

In reviewing a report and recommendation, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  A court must conduct a de novo review of those issues to which objection is made.  United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997).

Under Section 2254,

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is contrary to clearly established federal law when it applies a rule that contradicts the governing law set forth in Supreme Court caselaw or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.

McCray v. Capra, 45 F.4th 634, 640 (2d Cir. 2022) (citation omitted).  A state court's decision is an unreasonable

application of law clearly established by the Supreme Court "if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts." Jordan v. Lamanna, 33 F.4th 144, 150 (2d Cir. 2022) (citing Williams v. Taylor, 529 U.S. 362, 413 (2000)).  The writ can be granted on the ground of unreasonableness "only if the state court's ruling on the claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 151 (citation omitted).

Rodriguez argues that his trial counsel was ineffective for (1) failing to consult with or call a medical expert; (2) failing to consult with or call a psychological expert; (3) failing to impeach JR adequately; (4) calling the character witnesses; (5) failing to secure Nelson Rodriguez, Jr.'s testimony; and (6) failing to articulate a coherent theory of defense in his opening and closing statements.  Rodriguez also argues that Alcantara's testimony should have been excluded from trial.  It is undisputed that Rodriguez's petition is timely and that he properly exhausted his state court remedies.

I.   Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a defendant must demonstrate that (1) his counsel's representation fell below an objective standard of

7

> reasonableness, and (2) this deficient performance
> caused prejudice to the defendant -- that is, there is
> a reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding
> would have been different.

United States v. Overton, 24 F.4th 870, 880 (2d Cir. 2022)

(citing Strickland v. Washington, 466 U.S. 668, 688, 694

(1984)). On habeas review, the petitioner must show that the

state court's decision on the ineffectiveness claim was

unreasonable. Shinn v. Kayer, 141 S. Ct. 517, 523 (2020) (per

curiam); Waiters v. Lee, 857 F.3d 466, 478 (2d Cir. 2017).

    A.    Failure to Consult with or Call Medical Expert

In his petition, Rodriguez argues that his attorney's

failure to consult with or call a medical expert constituted

ineffective assistance of counsel. The Report recommends

denying this claim. Because Rodriguez objects to this

recommendation, it is reviewed de novo.

At trial, the Nurse testified that she found no physical

sign of any trauma from the sexual abuse described by JR. The

Nurse explained, however, that any injuries could have healed

due to the delay in disclosing the abuse. She referred to a

study in which only 5.5% of children reporting severe sexual

abuse had abnormal findings.

At the § 440 hearing, Rodriguez's attorney called two

witnesses to testify about the decision of Rodriguez's trial

counsel not to consult with a medical expert. She first

examined Rodriguez's trial counsel, who testified that he had reviewed the results of JR's medical evaluation and chose not to consult with experts because there were no physical findings of abuse.  The defendant also called Dr. Paynter, an emergency room physician, who opined that those who work in child advocacy centers, as the Nurse did, were not always objective; and that the more frequent the abuse, the more likely that there will be evidence of it.  He conceded on cross examination, however, that it was possible for penetration to leave no physical evidence of injury.

The State called Dr. Brown, a professor of Clinical Pediatrics at Columbia University, to testify at the § 440 hearing.  Dr. Brown disagreed with Dr. Paynter's opinion regarding the reliability of a diagnosis at a child advocacy center.  She also testified that she would not expect physical findings of abuse since two years had elapsed between the last incident and the examination and because healing is "extremely rapid."  She described in detail the types of physical abuse that are more and less likely to leave physical evidence of the abuse.  She added that delay in reporting abuse is not unusual, as children do not disclose abuse right away.

In its § 440 decision, the court held that trial counsel's decision not to call an expert was not objectively unreasonable given the lack of physical evidence of abuse and the long delay

in making the claim of abuse.  Based on the § 440 testimony, the
court found it unlikely that any defense medical expert would
have been helpful to the defense since physical findings
standing alone do not form a diagnosis of sexual abuse.
Instead, physical findings must be taken together with medical
history, statements of the child and caretakers, and the
circumstances in the case.  The court relied as well on a state
court decision finding it reasonable to adopt a strategy that
relies on the jury's common sense that a grown man's abuse of a
girl would have left evidence of trauma.

The § 440 court also described the coherence of the defense
strategy at trial.  Defense counsel elicited that there was no
medical or physical evidence of abuse or evidence that JR had
any problems at school, that Angela never saw anything out of
the ordinary at JR's home, that no one ever reported seeing
anything out of the ordinary, and that JR had not complained of
abuse until after returning from a trip to the Dominican
Republic.  As summarized by the court,

> The thrust of much of [defense counsel's] questioning
> of witnesses was that complainant and her mother
> fabricated the allegations due to anger over defendant
> only giving complainant's brother a computer or a
> mother's need for revenge after a bitter divorce.
> While clearly unsuccessful, this Court cannot say that
> the defense counsel was ineffective for pursuing it.

The Appellate Division denied this ineffectiveness claim,
affirming the § 440 decision.  The court reasoned, "Given that

the People's medical expert conceded that an examination of the victim did not reveal any physical signs of abuse, counsel's decision not to call a medical expert did not constitute ineffective assistance of counsel." Rodriguez, 73 N.Y.S.3d at 557.

The state court's application of Strickland is not unreasonable.  Based on defense counsel's explanation that he had examined and relied on the Nurse's medical report, in which the Nurse reported that she found no evidence of sexual abuse, it was not unreasonable for the state court to reject the claim that defense counsel had provided ineffective assistance when he failed to consult with or call a medical expert at trial.  At trial, the Nurse testified, as defense counsel expected, that there were no physical indicia of abuse.

Rodriguez faults the Report for not discussing Pavel v. Hollins, 261 F.3d 210 (2d Cir. 2001).  In Pavel, the Court of Appeals granted a writ of habeas corpus due to cumulative errors by defense counsel at trial, including the failure to prepare a defense.  Id. at 211.  Unlike here, in Pavel, there was some physical evidence that was consistent with sexual abuse.  Id. at 215.  Among a host of errors cited by the Court of Appeals in Pavel was the decision not to call a medical expert to testify as to the significance of the physical evidence of abuse presented by the prosecution.  Id. at 223.  Counsel in that case

11

did not call a medical expert or other witnesses because his
goal "was mainly avoiding work," rather than serving his
client's interests.  Id. at 218.  By contrast, Rodriguez's
counsel made a strategic decision to not consult or put on a
medical expert because there was no physical finding of abuse by
the prosecution's medical expert.  Pavel does not, therefore,
suggest that the state court unreasonably applied the Strickland
standard.

    B.  Failure to Consult with or Call Psychological Expert

    In his petition, Rodriguez argues that his attorney's
failure to consult with or call a psychological expert
constituted ineffective assistance of counsel.  The Report
recommends denying this claim.  Because Rodriguez objects to
this recommendation, it will be reviewed de novo.

    At the trial, the State called Dr. Lewittes, who described
CSAAS and its five stages.  He testified, in response to
hypothetical questions, that children commonly delay disclosure
of abuse until they have removed themselves from the home where
the abuse is occurring.  He also testified that adolescence can
trigger disclosure because complainants may have a better
understanding of sexuality once they reach their teenage years.
On cross examination, he opined that children over seven do not
make false accusations against people they love.

At the § 440 hearing, counsel testified that to prepare for the cross examination of Dr. Lewittes he researched the admissibility of testimony on intrafamilial child abuse syndrome, relied on state court decisions holding that evidence of this and related syndromes was admissible and that an attorney was not ineffective for not calling an expert on these syndromes, reviewed the expert's CV, and studied strategies for cross—examining medical and psychological experts.  Counsel also stated that he did not research medical literature about CSAAS prior to the trial and did not research references to Dr. Lewittes as an expert witness in other cases.  Instead, defense counsel had Dr. Lewittes admit at trial that he could not diagnose whether JR or any other child had been abused by Rodriguez.

Rodriguez's § 440 counsel did not call a psychological expert at the § 440 hearing.  Instead, in a portion of her affirmation in support of the § 440 motion, she described her conversation with Dr. John Yuille, a forensic psychologist at the University of British Columbia.  She explained that, according to Dr. Yuille, there is a "raging debate" about CSAAS and that Dr. Lewittes misrepresented the literature about CSAAS. In particular, Dr. Yuille explained to counsel that there is no support for the proposition that adolescence prompts disclosure of sexual abuse.  Counsel's affidavit also described her own

research regarding CSAAS and described the Second Circuit's
decision in Gersten v. Senkowski, 426 F.3d 588 (2d Cir. 2005).

In affirming the denial of the § 440 petition, the
Appellate Division did not address the issue of Dr. Lewittes's
testimony directly.  In its decision, the § 440 court reasoned
that, because New York courts routinely accept testimony like
that presented by Dr. Lewittes, counsel was not ineffective for
failing to call an expert to discredit the testimony.  It noted
in particular that defense counsel had elicited that Dr.
Lewittes could not diagnose whether JR had been sexually abused
by Rodriguez.  It added that the defendant had not, in any
event, shown that there was a reasonable probability that
calling a defense expert would have affected the outcome.

This ineffectiveness claim is also denied.  Rodriguez has
not shown that the state court unreasonably applied the Supreme
Court's jurisprudence regarding ineffective assistance of
counsel.  Trial counsel conducted research and learned that
expert testimony about CSAAS was admissible in state court,
elicited that the State's expert could not testify that abuse
had occurred, and pursued a defense theory casting doubt on the
existence of any abuse.  Nor is the § 440 court's conclusion
that Rodriguez had failed to show prejudice from counsel's
decision an unreasonable application of controlling Sixth
Amendment law.  As the § 440 court noted, Alcantara's testimony

was "devastating" to the defense.  In light of this testimony,
it was not unreasonable for the state court to hold that
Rodriguez was not prejudiced by counsel's failure to call a
psychological expert.

In his objections to the Report, Rodriguez principally
relies on Gersten and its analysis of the prejudice prong under
Strickland.  Rodriguez argues that Dr. Lewittes's testimony
bolstering the complainant's delay in disclosure should not have
been left unrebutted.

In Gersten, a decision issued before the Supreme Court's
articulation of the standard for habeas review in Harrington v.
Richter, 562 U.S. 86 (2011), the Court of Appeals cautioned that
it was not ruling that expert consultation is always necessary
in order to provide effective assistance of counsel in child
sexual abuse cases.  426 F.3d at 609.  In Gersten, however, the
Court of Appeals found that trial counsel had been ineffective
in not calling an expert and granted the writ.  The Gersten
court emphasized that defense counsel had failed to consult any
expert to counter the State's medical evidence that the
physicial examination of the victim-child showed evidence of
trauma.  Id. at 610.  Dr. Lewittes had also testified about
CSAAS in the Gersten trial, and the Court of Appeals found that
defense counsel's representation was also deficient when he
failed to consult or call an expert to challenge Dr. Lewittes's

15

testimony.  Id. at 611.  The Court of Appeals found that the petitioner had been prejudiced by these and other errors.  Id. at 614.

Unlike in Gersten, the state court decision here is not an unreasonable application of Supreme Court precedent.  As described in the § 440 decision, defense counsel developed and presented a theory of defense that highlighted the lack of physical corroboration of the abuse and the existence of a motive to wrongly accuse the defendant.  In this context, it was not error for the state court to find that defense counsel's cross examination of Dr. Lewittes was adequate and that the defendant failed to show prejudice from a failure to call an expert to contradict Dr. Lewittes.

The Report recommends issuing a certificate of appealability due to the similarity between this case and Gersten.  Dr. Lewittes provided testimony for the prosecution in both cases and neither defense counsel consulted with an expert to prepare a cross examination of Dr. Lewittes or called any psychologist to rebut his testimony.  Examining the context of Dr. Lewittes's testimony in the two cases, and conscious of the standard of review of the state court decision that must be applied here and which has been clarified since Gersten, this Court declines to issue a certificate of appealability.

16

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  In other words, for a district court to issue a certificate of appealability, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (citation omitted).  For the reasons explained above, Rodriguez has failed to show that Gersten alters the analysis, specifically that reasonable jurists would find that the Appellate Division erred when it affirmed the denial of Rodriguez's § 440 motion, including on the ground that he received ineffective assistance of counsel in connection with Dr. Lewittes's testimony.

C.   Failure to Impeach the Complainant

Rodriguez next asserts that his trial counsel failed to cross examine JR adequately when he failed to confront her with each of the inconsistencies between her trial testimony and her prior descriptions of the abuse to her mother and the Nurse, among others.  The Report recommends denying this claim.  Because Rodriguez objects to this recommendation, it will be reviewed de novo.

At the trial, counsel cross examined JR on several areas important to his defense.  His questioning established that JR

17

had not disclosed the abuse to anyone while it was ongoing.  To
establish a motive for a false accusation of abuse, he also
questioned JR about a fight she had with her father about a year
and a half before the trial.

At the § 440 hearing, trial counsel testified that he had
learned through prior professional experience that "special
care" was needed when working with child witnesses.  He stated
that he did not want to "go after [JR] hard" and upset the jury.
He had prepared an extensive examination of JR but explained
that he decided not to question her about every inconsistency,
including as to the dates of certain occurrences, as a matter of
strategy.

Rodriguez argued in his § 440 motion that his trial counsel
should have cross examined JR more extensively about certain
inconsistencies in her description of the abuse.  In affirming
the § 440 court's denial of this ineffectiveness claim, the
Appellate Division rejected the claim that the cross examination
of JR was deficient.  It concluded that counsel "reasonably
chose not to cross examine the victim about apparent
inconsistencies concerning her allegations, to avoid the risks
of making a negative impression on the jury by questioning the
young witness too aggressively, or prompting an emotional
reaction that could have enhanced the victim's credibility in
the jury's mind."  Rodriguez, 73 N.Y.S.3d at 557.

18

This claim is denied.  The Appellate Division's ruling is not an unreasonable application of Strickland.  The Second Circuit has recognized that in child sexual abuse cases, counsel must balance "draw[ing] out inconsistencies" from complainants while also "tak[ing] caution not to cross the line by questioning these sympathetic witnesses too severely in the presence of the jury."  Eze v. Senkowski, 321 F.3d 110, 133 (2d Cir. 2003).

In his objections to the Report, Rodriguez characterizes the cross examination of JR as quite aggressive but ineffectual.[2] He admits that his trial counsel asked JR "many aggressive and uncomfortable questions," but complains that defense counsel did not pursue as many prior inconsistent statements as he should have.  This objection fails.  Defense counsel is permitted to make tactical choices about the areas to emphasize in the cross examination of the victim.  The state court's rejection of this claim was entirely reasonable.

D.   Decision to Call Character Witnesses

Rodriguez argues that his attorney's decision to call three character witnesses was ineffective.  The § 440 decision explains that the defendant himself urged his attorney to call

---

[2] Defense counsel even questioned JR on the appearance of Rodriguez's penis.  Alcantara explained that Rodriguez had a mole on his penis; JR never described observing a mole.

the character witnesses and that his attorney discussed the
risks of doing so with him.  Ultimately, defense counsel made
the strategic decision to call them, and the § 440 court did not
fault that decision.  It found that the witnesses placed the
defendant "in a favorable light" and that it was not an
unreasonable decision to call them given the absence of physical
evidence of abuse.

The state court did not find that defense counsel was
ineffective for deciding to call the character witnesses.  The
Report recommends denying this claim, and Rodriguez does not
object.  The Report's conclusion is adopted.

E.   Failure to Secure Nelson Rodriguez, Jr.'s Testimony

Rodriguez argues that his attorney's failure to secure
Nelson Rodriguez, Jr.'s testimony was ineffective.  Nelson
Rodriguez, Jr. was JR's brother and lived with her and their
father during the period of the abuse.

The § 440 hearing addressed the absence of JR's brother as
a trial witness.  Rodriguez's trial attorney had hired an
investigator, a bilingual former police detective, to locate and
interview witnesses, including the brother.  JR's brother did
not want to testify at trial and traveled to the Domincan
Republic before the trial.  He testified under subpoena and
reluctantly at the § 440 hearing.  In the § 440 decision, the
court noted that trial counsel had sufficiently investigated the

20

facts and that there were legitimate explanations for trial counsel not being able to call Nelson Rodriguez, Jr. as a witness.

The state court did not find that defense counsel provided ineffective assistance in connection with the absence of JR's brother at trial.  The Report recommends denying this claim, and Rodriguez does not object.  The Report's conclusion is adopted.

F.   Opening and Closing Statements

Finally, Rodriguez asserts that his counsel's failure to present cogent opening and closing statements was ineffective. The state court addressed this argument in its § 440 decision and rejected it.  Among other things, it noted that the opening statement set out the theory of the defense and "followed through" on that theory when questioning witnesses and in the summation.  The Report recommends denying this claim, and Rodriguez does not object.  The Report's recommendation is adopted, and the claim is denied.

II.  Fourteenth Amendment

In addition to his claim that he received ineffective assistance of counsel at trial, Rodriguez asserts in his petition that the admission of Alcantara's testimony denied him a fair trial.  The trial judge permitted Alcantara to testify because her testimony was relevant as background to the "family situation" in this case and as interwoven with JR's testimony.

21

JR testified that Rodriguez had told her that he would "do it to [Alcantara] three times a day."  Alcantara was one of nine family members who the prosecution sought to call to testify that Rodriguez had also abused them, and the only one whom the trial judge allowed to testify.

"In order to prevail on a claim that an evidentiary error deprived the defendant of due process under the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial."  Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985).  The admission of evidence constitutes a due process violation when, "viewed objectively in light of the entire record before the jury, [the evidence] was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it."  Id. at 19.  On habeas review, a petitioner must also "identify a Supreme Court case that clearly establishes that the admission of" the evidence "constitutes a violation of the Fourteenth Amendment."  Evans v. Fischer, 712 F.3d 125, 133 (2d Cir. 2013).

The Appellate Division held that Alcantara's testiony was properly admitted to corroborate JR's testimony and that the probative value outweighed any prejudice from its admission.  Rodriguez, 73 N.Y.S.3d at 556.  The court also concluded that any error in the trial court's decision to admit the testimony

22

was harmless.  Id. at 556-57.  The Report recommends denying the Fourteenth Amendment claim, and Rodriguez does not object.  The Report's recommendation is adopted, and the claim is denied.

### Conclusion

The Report of May 23, 2022, to the extent it recommends denial of the petition, is adopted.  The petition for a writ of habeas corpus is denied.  Rodriguez having not made a substantial showing of a denial of a federal right, a certificate of appealability shall not be granted.  Hoffler v. Bezio, 726 F.3d 144, 154 (2d Cir. 2013); Tankleff v. Senkowski, 135 F.3d 235, 241 (2d Cir. 1998); Rodriguez v. Scully, 905 F.2d 24, 24 (2d Cir. 1990).  Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 445 (1962).  The Clerk of Court shall close the case.

Dated:     New York, New York
           February 13, 2023

                                    DENISE COTE
                          United States District Judge

23